# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **K.S. and K.K.-1**

**No. 24-439** (Kanawha County CC-20-2023-JA-168 and CC-20-2023-JA-169)

## MEMORANDUM DECISION

Petitioner Mother K.K.-2[1] appeals the Circuit Court of Kanawha County's July 30, 2024, order terminating her parental rights to K.S. and K.K.-1, arguing that termination was not the least restrictive alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

On June 7, 2023, the DHS filed a petition alleging that the petitioner abused and neglected the children. According to the DHS, then-one-year-old K.S. was brought to the hospital where staff discovered fentanyl in the child's system. The DHS alleged that the petitioner appeared "unfazed and unbothered" by the child's life-threatening condition, transport via airlift to a different facility, and need for a ventilator. While the petitioner claimed she was at work when K.S. would have ingested the drugs, the DHS further alleged that the petitioner, then-two-year-old K.K.-1, and other individuals were in a hotel room with K.S. when he began exhibiting overdose symptoms. As such, the DHS alleged that the petitioner failed to protect K.S. from ingesting drugs, abused drugs to the detriment of her parenting abilities, and failed to provide the children with necessary food, clothing, supervision, and housing. Shortly after the petition was filed, the court ordered the petitioner to undergo a forensic psychological examination.

---

[1] The petitioner appears by counsel Michael M. Cary. The West Virginia Department of Human Services appears by Attorney General John B. McCuskey and Assistant Attorney General Heather L. Olcott. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Matthew Smith appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Because one of the children and the petitioner share the same initials, we refer to them as K.K.-1 and K.K.-2, respectively.

1

On June 14, 2023, the circuit court held a preliminary hearing at which it ordered the petitioner to submit to drug screens and begin remedial services. On June 29, 2023, the DHS filed an amended petition alleging that one of the individuals in the hotel room, K.K.-1's father, W.S., later admitted to law enforcement that he placed a bag of fentanyl and some cash in a drawer in the hotel room and that he saw K.K.-1 grab the cash. He further admitted that after leaving the hotel room for a time, he returned and observed bite marks on the bag and fentanyl spread throughout the drawer.

In September 2023, the petitioner underwent a psychological evaluation. The evaluator concluded that due to "her exposure of her children to circumstances that would foreseeably result in harm, apparent minimization of her own substance abuse history, and possible minimization of history of domestic violence," her prognosis for improved parenting was "poor."

After holding several adjudicatory hearings, the court entered an adjudicatory order in January 2024, in which it found that the petitioner caused a delay in K.S. receiving emergency medical care by being dishonest with hospital staff about what happened and, thus, subjected the child to a near-death experience. Further, the court found that the petitioner exposed the children to dangerous narcotics which were within their reach. Accordingly, the court adjudicated the petitioner of abusing and neglecting the children.

In April 2024, the circuit court held two dispositional hearings at which it heard testimony from a Child Protective Services ("CPS") worker. The worker testified that the petitioner participated in services but failed to acknowledge the severity of the problems. The worker opined that the issues could not be corrected through services or otherwise, as demonstrated by the petitioner's continued contact with individuals who posed a threat to the children, including her paramour, who was involved in a shooting in January 2024. The petitioner, her paramour, and another individual who was present in the hotel room where K.S. ingested fentanyl were involved in the shooting. The worker confirmed that the petitioner was present when K.S. ingested fentanyl, did not call 911, and initially lied to law enforcement about being at work when the overdose occurred to avoid legal repercussions. The worker testified that the petitioner instructed another individual take K.S. to the hospital and she arrived later, claiming she was at work, to deceive hospital staff. Next, the evaluator who conducted the petitioner's psychological evaluation testified as to the petitioner's inability to anticipate danger and make good decisions as to who had access to her children. In the resulting order, the court found that the petitioner subjected K.S. to extreme medical neglect, having been exposed to a dangerous, deadly, and illegal controlled substance. The court explained that the petitioner and W.S. "hesitated to provide medical treatment for [K.S.], selfishly choosing instead to concoct a scheme to cover up their illegal conduct which . . . put the child at continued peril," which constituted an aggravated circumstance. Further, the court found that the petitioner continued to exhibit poor judgment and associate with people who engaged in unlawful and dangerous activities. The court determined that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future, the children's best interests necessitated termination, and no less drastic alternatives were available.

Ultimately, the court terminated the petitioner's parental rights to K.S. and K.K.-1. It is from this order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that termination was not the least restrictive alternative and unnecessary because the children had achieved permanency in a kinship placement. In support, she asserts that she complied with services. However, compliance with remedial services is only one factor to be considered and "[t]he controlling standard that governs any dispositional decision remains the best interest of the child." Syl. Pt. 4, in part, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). We have held that

> [t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected.

Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). Moreover, "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years." *Id.* at 496, 266 S.E.2d at 114, Syl. Pt. 1, in part. Here, the court found that the petitioner continually exhibited poor judgment regarding individuals and situations that could have caused her young children serious harm. Despite her compliance with services, the petitioner demonstrated a lack of understanding of the gravity of her child's ingestion of fentanyl, leading the court to conclude that the issues could not be corrected. *See In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 325, 363 (2013) ("In order to remedy the abuse and/or neglect problem, the problem must first be acknowledged."). Ample evidence supports the court's conclusions that there was no reasonable likelihood that the conditions of abuse or neglect could be corrected in the near future and the children's best interests necessitated termination, especially given their young ages, and termination of parental rights is appropriate upon these findings. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit courts to terminate parental rights upon finding no reasonable likelihood conditions of neglect can be substantially corrected in the near future and when necessary for the child's welfare). As such, the petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 30, 2024, order is hereby affirmed.

Affirmed.

---

[3] K.S.'s father is deceased. K.K.-1's father's parental rights were terminated. The permanency plan for the children is adoption in the current placement.

**ISSUED**: July 30, 2025


**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

4